United States Bankruptcy Court
Southern District of Texas
**ENTERED**
January 28, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 23-31199 |
| ANADRILL DIRECTIONAL SERVICES INC., | § | |
| | § | CHAPTER 7 |
| | § | |
| Debtor. | § | |
| | § | |
| RONALD J SOMMERS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 25-3039 |
| | § | |
| GLOBAL MERCHANT CASH, INC., | § | |
| GLOBAL MERCHANT CASH, INC., and | § | |
| GLOBAL MERCHANT CASH, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

Ronald J. Sommers, the chapter 7 Trustee, brought a complaint against Global Merchant Cash, Inc., to recover an alleged fraudulent transfer, arguing that Global Merchant Cash gave Anadrill Directional Services, Inc., a loan that carried a usurious interest rate.[1] The Trustee further argues the loan is void because Global Merchant Cash did not give reasonably equivalent value to Anadrill Directional Services in exchange for Anadrill Directional Services' loan payments.[2] But Global Merchant Cash brought a motion to dismiss arguing that the agreement was for a sale of future receivables, not a usurious loan.[3] The Trustee also brought a claim alleging that Global Merchant Cash violated the Racketeer Influenced and Corrupt Organizations Act.[4] This Court

---

[1] ECF No. 1, at 5-9.
[2] ECF No. 1, at 5-9.
[3] ECF No. 21, at 13-18.
[4] ECF No. 1, at 9-11.

finds that Count 1 – Avoidance of Constructively Fraudulent Obligation under 11 U.S.C. § 548(a)(1)(B); Count 2 – Avoidance of Constructively Fraudulent Transfers under 11 U.S.C. § 548(a)(1)(B); and Count 3 – Recovery of Avoided Transfers under § 550(a)(1) survive the motion to dismiss because the Trustee has pled a plausible claim for relief as it relates to the fraudulent obligation, fraudulent transfer, and recovery of the transferred funds. But this Court grants the motion to dismiss Count 4 – Violations of RICO – 18 U.S.C. §§ 1962(a), 1964(c) because the Trustee failed to plead a plausible claim for relief under the Racketeer Influenced and Corrupt Organizations Act.

## I. BACKGROUND

1. The debtor Anadrill Directional Services, Inc. ("*Anadrill*") is an oil and gas drilling service in Texas.[5]

2. On March 17, 2022, Anadrill entered a merchant cash advance agreement (the "*Agreement*") with Global Merchant Cash, Inc. ("*GMC*") in which GMC agreed to pay Anadrill $650,145.18.[6] In exchange, Anadrill agreed to pay GMC $1,016,000.00 in weekly installments of $21,166.67.[7] Per the Agreement, the weekly payment of $21,166.67 represents 10% of Anadrill's future income.[8]

3. According to the Trustee, if Anadrill pays $21,166.67 per week, it would take forty-eight payments over a 336-day period to pay the full amount of $1,016,000.00, and the interest rate would equal 61.13%.[9]

4. Per the Agreement, the parties stipulated that New York law would govern the Agreement.[10] GMC was also authorized to file a financing statement to encumber all of Anadrill's assets.[11] Anadrill was required to enter a confession of judgment in the amount of $1,016,000.00, if Anadrill ever defaulted on payments.[12]

---

[5] ECF No. 1, ¶ 8.
[6] ECF No. 1, ¶ 9.
[7] ECF No. 1, ¶ 9-10.
[8] ECF No. 1, ¶ 10.
[9] ECF No. 1, ¶ 11.
[10] ECF No. 1, ¶ 12.
[11] ECF No. 1, ¶ 12.
[12] ECF No. 1, ¶ 13.

5. Per the Agreement, if Anadrill defaulted on payments, GMC could then withdraw 100% of Anadrill's revenue from Anadrill's bank account via ACH, until Anadrill's $1,016,000.00 debt was paid in full.[13]

6. On March 21, 2022, GMC paid Anadrill $650,145.28.[14] Beginning on March 28, 2023, Anadrill made forty weekly payments of $21,166.67 for a total of $846,666.80.[15]

7. On February 11, 2025, Ronald J. Sommers, the chapter 7 Trustee ("*Trustee*") filed the "Complaint."[16]

8. On June 25, 2025, GMC filed the "Defendant Global Merchant Cash, Inc.'s Motion To Dismiss Pursuant To Federal Rule 12(b)(6)"[17] (the "*Motion to Dismiss*").

9. On July 16, 2025, the Trustee filed a "Response In Opposition To The Motion To Dismiss" (the "*Response*").[18]

10. On July 22, 2025, GMC filed the "Defendant Global Merchant Cash, Inc.'s Reply In Further Support Of Motion To Dismiss Pursuant To Federal Rule 12(B)(6)."[19]

## II.    JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides that "the district courts shall have original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11." An adversary proceeding falls within the Court's "related to" jurisdiction if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[20] The District Court for the Southern District of Texas has referred all such matters to the bankruptcy courts by standing order.[21]

---

[13] ECF No. 1, ¶ 15.
[14] ECF No. 1, ¶ 16.
[15] ECF No. 1, ¶ 17.
[16] ECF No. 1.
[17] ECF No. 21.
[18] ECF No. 24.
[19] ECF No. 26.
[20] *In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999).
[21] Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

Venue is proper pursuant to 28 U.S.C. § 1409(a), which provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Because the underlying bankruptcy case is pending in this district, venue is proper.

This Court also determines that this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(H), as it concerns the avoidance and recovery of allegedly fraudulent transfers. Even if this matter were deemed non-core, the Court finds that denying in part and granting in part a motion to dismiss is interlocutory in nature and therefore may be entered regardless of final adjudicatory authority.[22]

### III.   ANALYSIS

The Motion to Dismiss seeks dismissal of the claims asserted by the Trustee in the Complaint.[23] In the Complaint, the Trustee brings the following causes of action, to wit: Count 1 – Avoidance of Constructively Fraudulent Obligation under 11 U.S.C. § 548(a)(1)(B) as to a certain agreement between Anadrill and GMC; Count 2 – Avoidance of Constructively Fraudulent Transfers under 11 U.S.C. § 548(a)(1)(B) as to certain payments made under those agreements; Count 3 – Recovery of Avoided Transfers under § 550(a)(1), and; Count 4 – Violations of RICO – 18 U.S.C. §§ 1962(a), 1964(c).[24]

**A. Standard of Review for Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must clear two hurdles. First, the complaint must describe the claim in enough detail to give fair notice of the

---

[22] *Strategy & Execution, Inc. v. Black Rifle Coffee Co., LLC*, No. SA-23-CV-135-FB, 2025 WL 1914873, at *2 (W.D. Tex. Mar. 30, 2025) (finding that the granting of a partial motion to dismiss was interlocutory in nature); *see also Hines v. Alldredge*, 783 F.3d 197, 200 (5th Cir. 2015).
[23] *See* ECF No. 21, at 6.
[24] *See generally* ECF No. 1.

claim and the grounds for it.[25] "[A] formulaic recitation of the elements of a cause of action will not do."[26] Specifics are unnecessary, but some facts must support each element.[27] Second, the complaint must state a claim that is "plausible on its face,"[28] meaning the plaintiff's right to relief must rise above a "speculative level."[29] Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."[30] In *Ashcroft v. Iqbal*, the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts . . . permit the court to infer more than the mere possibility of misconduct."[31] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[32] The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.[33]

Motions to dismiss are disfavored and thus, rarely granted.[34] When considering a motion to dismiss under Rule 12(b)(6), courts accept well-pleaded allegations as true and liberally construe the complaint in favor of the plaintiff.[35] This Court reviews motions under Rule 12(b)(6) by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff."[36] When considering a motion to dismiss under Rule 12(b)(6), the Court must assess

---

[25] *See* Fed. R. Civ. P. 8(a) (made applicable by Fed. R. Bankr. P. 7008).
[26] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).
[27] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).
[28] *Twombly*, 550 U.S. at 570.
[29] *Id.* at 555.
[30] Fed. R. Civ. P. 8(a).
[31] *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).
[32] *Id.* at 678.
[33] *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) ("A complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true raise a right to relief above the speculative level.") (citations omitted).
[34] *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).
[35] *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).
[36] *Stokes v. Gann*, 498 F. 3d 483, 484 (5th Cir. 2007) (per curiam).

the legal feasibility of the complaint, not weigh the evidence that might be offered in its support.[37] The Court's consideration "is limited to facts stated on the face of the complaint and in the documents appended to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken."[38] And although this Court "will not strain to find inferences favorable to the plaintiff[],"[39] the facts need only be sufficient "for an inference to be drawn that the elements of the claim exist."[40] To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must meet Rule 8(a)(2)'s pleading requirements. Although claims sounding in fraud must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), that rule does not apply to constructive fraudulent transfer claims under 11 U.S.C. § 548(a)(1)(B), because such claims do not require intent to defraud.[41] Courts in the Fifth Circuit routinely apply the general pleading standard of Rule 8(a) to constructive fraudulent transfer claims.[42]

### B. Choice of Law

As a threshold matter, the Court must determine whether New York law governs the dispute, as per the Agreement's choice of law clause.[43] Bankruptcy courts faced with a choice of law issue must decide whether to apply federal or state law.[44] The question depends on whether state law or federal bankruptcy law was invoked by the cause of action.[45]

---

[37] *Koppel v. 4987 Corp.*, 167 F.3d 125, 133 (2d Cir. 1999).
[38] *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993).
[39] *Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).
[40] *See Harris v. Fid. Nat'l Info. Serv.* (*In re Harris*), Nos. 03-44826, 08-3014, 2008 Bankr. LEXIS 1072 at *11 (Bankr. S.D. Tex. Apr. 4, 2008) (citing *Walker v. S. Cent. Bell Tel. Co.*, 904 F2d 275, 277 (5th Cir. 1990)).
[41] *Life Partners Creditors' Tr. v. Cowley (In re Life Partners Holdings, Inc.)*, 926 F.3d 103, 118–19 (5th Cir. 2019) ("Constructive fraudulent transfer claims do not require allegations of intent to defraud and are therefore not subject to Rule 9(b).").
[42] *Rodriguez v. Cyr (In re Cyr)*, 602 B.R. 315, 324–25 (Bankr. W.D. Tex. 2019); *Think3 Litig. Tr. v. Zuccarello (In re Think3, Inc.)*, 529 B.R. 147, 182 (Bankr. W.D. Tex. 2015) (holding that Rule 8 governs constructive fraudulent transfer claims in the Fifth Circuit).
[43] *In re Cyrus II P'ship*, 413 B.R. 609, 613 (Bankr. S.D. Tex. 2008).
[44] *In re iHeartMedia, Inc.*, 597 B.R. 339, 350 (Bankr. S.D. Tex. 2019).
[45] *Id.*; *see also Crist v. Crist (In re Crist),* 632 F.2d 1226, 1229 (5th Cir. 1980) ("But the Fifth Circuit has held, "[w]here disposition of a federal question requires reference to state law, federal courts are not bound by a forum state's choice of law rules, but are free to apply the law considered relevant to the pending controversy.").

Here, the Trustee brings usury claims which arise from state law.[46] Furthermore, the Trustee alleges that the contract is governed by New York law, because there is a choice of law clause in the Agreement stating that the parties agreed that New York law would apply.[47] GMC does not appear to dispute that New York law applies in its pleadings.[48] Therefore, the Court does not need to engage in further choice of law analysis at this stage.[49] Construing the allegations in the Trustee's favor, the Court will apply New York law for purposes of the Motion to Dismiss.

## C.  Whether the Agreement Is a Loan or Sale of Future Receivables

Another threshold matter is the determination of whether the Agreement is a loan or sale of future receivables, because all four of the Trustee's Counts depend on whether the Agreement was a sale or a high-interest loan.[50] Under New York law, courts look to the substance, not merely the form, of an agreement to determine whether it constitutes a loan subject to usury laws.[51] Agreements styled as "merchant cash advances" or "receivables purchases" may actually be loans if they impose an absolute obligation to repay and shift virtually all risk to the borrower, or "seller" of the future receivables.[52] This is because in a true sale of future receivables, the lender, or "buyer," bears the risk that the purchased asset will be uncollectible.[53]

When determining whether the right to repayment is absolute, New York courts weigh three factors: "(1) whether there is a reconciliation provision in the agreement; (2) whether the

---

[46] *See generally* ECF No. 1.
[47] ECF No. 1, ¶ 12.
[48] *See generally* ECF No. 21, 26.
[49] *See In re Black Elk Energy Offshore Operations, LLC*, No. 15-34287, 2022 WL 1589190, at *16 (Bankr. S.D. Tex. May 19, 2022).
[50] *See generally* ECF No. 1.
[51] *See Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 334 (2021).
[52] *AKF, Inc. v. W. Foot & Ankle Ctr.*, 632 F. Supp. 3d 66, 77 (E.D.N.Y. 2022) ("A loan entails an absolute contractual entitlement for repayment and allocates risk to the borrower; conversely, a sale affords only a conditional right for performance and allocates risk to the buyer.").
[53] *Id.*; *see e.g.*, *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 414 (5th Cir. 2003); *see also Fleetwood Servs., LLC v. Richmond Cap. Grp. LLC*, 2023 U.S. App. LEXIS 14241, at *3 (2d Cir. 2023) ("(1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy.").

agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy."[54] In addition, courts may consider whether there are default provisions entitling the lender to immediate repayment, and whether the agreement allows collection on a personal guaranty in the event of default or bankruptcy.[55]

Here, when looking at the Agreement's substance, there are several aspects of it that indicate it is a loan. GMC does not appear to be bearing the risk of the Agreement because GMC retained the ability to sweep 100% of Anadrill's income via ACH.[56] This shows that GMC has control over the funds and is effectively requiring full repayment regardless of business performance. Furthermore, the parties agreed that Anadrill must enter a confession of judgment if it defaults,[57] which shows that GMC can pursue recovery even if ACH defaults. GMC also took a security interest in all of Anadrill's assets, further mitigating GMC's risk.[58] Additionally, the Agreement stipulates that the owner of Anadrill, Patrick McKinley, agreed to personally guarantee the debt.[59] Therefore, GMC has methods to recover even if Anadrill defaults, which shows that GMC, the lender, is not bearing the risk of the Agreement. These features are hallmarks of a disguised loan rather than a true sale of future receivables.[60]

In response, GMC argues the Agreement is not a loan because the right to repayment is not absolute.[61] GMC points to the tripartite test used by New York courts, arguing that (1) the Agreement contains a reconciliation provision, and if an agreement contains a reconciliation

---

[54] *LG Funding, LLC v. United Senior Props. of Olathe, LLC*, 181 A.D.3d 664 (2d Dept. 2020).
[55] *Id.* at 666.
[56] ECF No. 1, ¶ 14.
[57] ECF No. 1, ¶ 13.
[58] ECF No. 1, ¶ 12.
[59] ECF No. 1, ¶ 14.
[60] *See LG Funding, LLC v. United Senior Props. of Olathe, LLC*, 181 N.Y.S.3d 219, 2022 N.Y. Misc. LEXIS 4113, at *5 (Sup. Ct. N.Y. Cnty. Aug. 16, 2022) (finding MCA agreement to be a loan where repayment was not contingent on receivables and daily debits were required regardless of revenue).
[61] ECF No. 21, at 13-16.

provision, this indicates the right to repayment is not absolute.[62] But the reconciliation provision here does not allow for a change in the total amount Anadrill owes GMC, just the amount Anadrill owes in any given week.[63] GMC also argues that (2) the Agreement has no finite term, indicating that Anadrill's obligation to pay is "contingency based and not absolute."[64] But the total amount Anadrill owes in interest is easily calculated by adding up the forty-eight payments, and deducting the amount Anadrill paid to GMC, which indicates there is an absolute obligation to pay.[65] Furthermore, GMC argues that (3) the Agreement contains no provision declaring that bankruptcy would be considered a default, indicating that GMC's right to repayment is not absolute.[66] This factor is not dispositive, however, as GMC still has other ways to recover from Anadrill.[67] GMC also argues the Agreement has an express provision stating that "THIS IS NOT A LOAN."[68] But at the motion to dismiss stage, courts permit claims to proceed where the complaint plausibly alleges facts showing that in *substance* the agreement operated as a loan.[69] Thus, GMC has not shown that the right to repayment is not absolute, and the Trustee has plausibly pled that the Agreement is a loan, not a sale.

Now that it has been determined that the Trustee has made a plausible case that the Agreement is a loan, the Court will next examine the four Counts.

**D. The Trustee's Claims to Avoid an Obligation and Transfer Under § 548(a)(1)(B)**

---

[62] ECF No. 21, at 13-16.
[63] *In re Williams Land Clearing, Grading, & Timber Logger, LLC*, Nos. 22-02094-5-PWM, 23-00024-5-PWM, 2025 Bankr. LEXIS 1201, at *25 (Bankr. E.D.N.C. May 16, 2025) (citing *AKF, Inc. v. Haven Transp. Bus. Sols., Inc.*, No. 1:22-cv-269 (MAD/CFH), 2024 WL 2941746, at *7 (N.D.N.Y. June 11, 2024)).
[64] ECF No. 21, at 8, n.50 (quoting *MCA Master Fund (MMF) v. Universal Scrap Motors Inc.*, 2021 N.Y. Slip Op. 30097(U), ¶ 4 (N.Y. Sup. Ct. 2021)).
[65] *See AKF*, 2024 WL 2941746, at *7.
[66] ECF No. 21, at 15-16.
[67] *AKF*, 2024 WL 2941746, at *7.
[68] ECF No. 21, at 12-13.
[69] *In re Martinez Quality Painting & Drywall, Inc.*, No. 22-30357, 2025 WL 828882, at *8 (Bankr. W.D.N.C. Mar. 14, 2025).

To state a claim for constructive fraudulent obligation or transfer under 11 U.S.C. § 548(a)(1)(B), the Trustee must plausibly allege that:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor that was made . . . within 2 years before the date of the filing of the petition, if . . . the debtor . . . made such transfer or incurred such obligation and . . . (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

In its Motion to Dismiss, GMC challenges only whether Anadrill received reasonably equivalent value.[70] Accordingly, the Court's analysis under Rule 12(b)(6) will focus on that single, disputed element.

### 1. Count 1 – The Trustee's Claim to Avoid a Constructively Fraudulent Obligation

The Trustee alleges the Agreement was a usurious loan and thus the obligation cannot provide reasonably equivalent value.[71] Under New York law, loans that charge an interest rate exceeding 25% per annum are criminally usurious and void *ab initio*.[72] A contract that is void has no legal effect and creates no enforceable rights or obligations.[73]

But New York General Obligations Law § 5-511 prohibits corporations from using criminal usury as a defense, and "New York courts have held that the general prohibition on corporations asserting (noncriminal) usury as a defense should also be read to prohibit corporations from bringing affirmative claims alleging criminal usury."[74]

---

[70] *See generally* ECF No. 21.
[71] *In re Martinez Quality Painting*, 2025 WL 828882, at *8.
[72] *See Adar Bays, LLC*, 37 N.Y.3d at 325-26.
[73] *Id.*
[74] *In re Williams Land Clearing, Grading, & Timber Logger, LLC*, Nos. 22-02094-5-PWM, 23-00024-5-PWM, 2025 Bankr. LEXIS 1201, at *32 (Bankr. E.D.N.C. May 16, 2025) (quoting *Haymount Urgent Care PC v. GoFund Advance, LLC*, 635 F. Supp. 3d 238, 242-43 (S.D.N.Y. 2022) (citing *Intima-Eighteen, Inc. v. A.H. Schreiber Co.*, 172 A.D. 2d 456, 457-58 (N.Y. App. Div. 1991))).

Here, the Trustee argues that the interest rate of 61.13% was too high to be legal in New York, and thus the Agreement is void *ab initio* according to § 5-511.[75] Therefore, according to the Trustee, the Agreement cannot provide reasonably equivalent value.[76] GMC argues, however, that while New York statute Gen. Obligations Law § 5-521(1) only expressly prohibits corporations from using usury as a defense, some New York courts have held that, by inference, corporations cannot use usury as an affirmative claim either.[77]

In response, the Trustee points to two other cases to support the use of usury as an affirmative claim: *In re Shoot the Moon* and *In re Martinez Quality Painting & Drywall*.[78] While the Western District of Missouri Bankruptcy Court found in *In re Shoot the Moon* that a preferential transfer claim based on a usurious loan survived a motion to dismiss, the court did not apply New York law and did not address the argument that usury cannot be used as an affirmative claim under New York law.[79] But in *In re Martinez Quality Painting & Drywall*, the plaintiff argued that a loan was void *ab initio* and so the loan did not provide reasonably equivalent value, and the Western District of North Carolina Bankruptcy Court allowed the complaint to survive the motion to dismiss, finding that the claim was plausible.[80] Thus, the Trustee has stated a plausible claim for relief by arguing that because the loan was void it did not provide reasonably equivalent value.

---

[75] ECF No. 1, at 6-7; *In re Martinez Quality Painting & Drywall, Inc.*, No. 22-30357, 2025 WL 828882, at *8 (Bankr. W.D.N.C. Mar. 14, 2025); *see also Adar Bays, LLC*, 37 N.Y.3d at 333 (2021).
[76] ECF No. 1, at 6-7.
[77] ECF No. 21, at 11; *Intima-Eighteen, Inc. v. A.H. Schreiber Co.*, 172 A.D.2d 456, 457 (1991).
[78] *Martinez Quality Painting*, 2025 WL 828882, at *8; *In re Shoot the Moon, LLC*, No. 15-60979-TLM, 2020 WL 2621173, at *11 (Bankr. D. Mont. May 21, 2020).
[79] *In re Shoot the Moon*, 2020 WL 2621173, at *11.
[80] *Martinez Quality Painting*, 2025 WL 828882, at *8 ("[T]he Plaintiff may not use the Criminal Usury Statute to argue that the MCA Agreements or Transfers are void, but the Plaintiff may argue that there is a lack of reasonably equivalent value on another basis set forth in the Complaint, including under section 5-511 of the New York General Obligations Law.").

The Trustee also makes an independent argument that Anadrill did not receive reasonably equivalent value.[81] The Trustee argues that regardless of whether the Agreement was usurious Anadrill did not receive reasonably adequate consideration because Anadrill was obligated to pay $1,016,000 to GMC and only received $650,145.28 in return.[82] At the motion to dismiss stage, this Court must take the Trustee's alleged facts as true and construe inferences in the Trustee's favor. Thus, the Trustee has pled a plausible claim for relief as to Count 1.

2. Count 2 - The Trustee's Claim to Avoid a Constructively Fraudulent Transfer

The Trustee alleges that because the contract between Anadrill and GMC was fraudulent, Anadrill's payment was made without receiving reasonably equivalent value.[83] Under New York law, loans that charge an interest rate exceeding 25% per annum are criminally usurious and void *ab initio*.[84] A contract that is void has no legal effect and creates no enforceable rights or obligations.[85]

But New York General Obligations Law § 5-511 prohibits corporations from using criminal usury as a defense, and "New York courts have held that the general prohibition on corporations asserting (noncriminal) usury as a defense should also be read to prohibit corporations from bringing affirmative claims alleging criminal usury."[86]

Here, the Trustee alleges that the transfers were fraudulent because the Agreement imposed an annualized interest rate of 61.13%, more than double the criminal usury threshold under New

---

[81] ECF No. 24, at 16.
[82] ECF No. 24, at 16.
[83] ECF No. 1, ¶ 37.
[84] *See Adar Bays, LLC*, 37 N.Y.3d at 325-26.
[85] *Id.*
[86] *In re Williams Land Clearing, Grading, & Timber Logger, LLC*, Nos. 22-02094-5-PWM, 23-00024-5-PWM, 2025 Bankr. LEXIS 1201, at *32 (Bankr. E.D.N.C. May 16, 2025) (quoting *Haymount Urgent Care PC v. GoFund Advance, LLC*, 635 F. Supp. 3d 238, 242-43 (S.D.N.Y. 2022) (citing *Intima-Eighteen, Inc. v. A.H. Schreiber Co.*, 172 A.D. 2d 456, 457-58 (N.Y. App. Div. 1991))).

York law.[87] The Trustee further alleges that the Agreement was not a true sale of receivables but a disguised loan with terms that ensured full repayment regardless of the debtor's revenue, including daily withdrawals and personal guarantees.[88] Therefore, the Trustee argues, the transfers Anadrill made to GMC in the amount of $846,666.80 were made pursuant to a criminally usurious contract and so there was no reasonably equivalent value bestowed on Anadrill.[89] GMC counters that while New York statute Gen. Obligations Law § 5-521(1) only expressly prohibits corporations from using usury as a defense, some New York courts have held that, by inference, corporations cannot use usury as an affirmative claim either.[90] But the Trustee argues that transfers made pursuant to a void contract cannot provide reasonably equivalent value, and so, construing the allegations in the Trustee's favor, the Trustee has stated a plausible claim for relief.[91]

The Trustee also makes an independent argument that Anadrill did not receive reasonably equivalent value.[92] The Trustee argues that regardless of whether the Agreement was usurious Anadrill did not receive reasonably adequate consideration because Anadrill was obligated to pay $1,016,000 to GMC and only received $650,145.28 in return.[93] At the motion to dismiss stage, this Court must take the Trustee's alleged facts as true and construe inferences in the Trustee's favor. Thus, the Trustee has pled a plausible claim for relief as to Count 2.

E.  **Count 3 - Recovery of Avoided Transfers Under § 550(a)(1)**

---

[87] ECF No. 1, ¶ 25 (alleging 61.13% interest rate); *see also* N.Y. Penal Law § 190.40 (criminal usury threshold is 25%).
[88] ECF No. 1, ¶¶ 12-15 (alleging guaranteed repayments, daily debits, and risk-shifting structure).
[89] ECF No. 1, ¶¶ 36-43.
[90] ECF No. 21, at 11; *Intima-Eighteen, Inc. v. A.H. Schreiber Co.*, 568 N.Y.S. 2d 802, 804 (1991).
[91] *Martinez Quality Painting*, 2025 WL 828882, at *8 ("[T]he Plaintiff may not use the Criminal Usury Statute to argue that the MCA Agreements or Transfers are void, but the Plaintiff may argue that there is a lack of reasonably equivalent value on another basis set forth in the Complaint, including under section 5-511 of the New York General Obligations Law.").
[92] ECF No. 24, at 16.
[93] ECF No. 24, at 16.

The Trustee argues that the transfers from GMC should be recoverable because they were made pursuant to a void loan.[94] 11 U.S.C. § 550(a)(1) provides for recovery of avoided transfers.

Here, the Trustee argues that GMC was the initial transferee of avoidable transfers equaling $846,666.80, and so the transfers should be recovered pursuant to 11 U.S.C. § 550(a)(1).[95] GMC argues that Count 3 should be dismissed because the Trustee's claim relies on the Agreement being a loan, and, according to GMC, the Agreement is not a loan.[96] But as explained above,[97] the Trustee has made a plausible claim that the Agreement is a loan. Therefore, the Trustee has pled a plausible claim for relief as to Count 3.

F.  **Count 4 – Violations of RICO – 18 U.S.C. §§ 1962(a), 1964(c)**

The Trustee alleges that GMC has violated the Racketeer Influenced and Corrupt Organizations Act (the "*RICO Act*") and is therefore entitled to damages. The RICO Act, 18 U.S.C. § 1962(a), provides:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, … through collection of an unlawful debt in which such person has participated as a principal … to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

> The RICO Act has five elements that must be proven:

> [1] that a debt existed, [2] that it was unenforceable under New York's usury laws, [3] that it was incurred in connection with the business of lending money at more than twice the legal rate, [4] that the defendant aided collection of the debt in some manner, and [5] that the defendant acted knowingly, willfully and unlawfully.[98]

---

[94] ECF No. 1, ¶¶ 44-46.
[95] ECF No. 1, ¶¶ 44-46.
[96] ECF No. 21, at 6.
[97] *See supra*, III.C.
[98] *Haymount Urgent Care PC v. GoFund Advance, LLC*, 609 F. Supp. 3d 237, 246 (S.D.N.Y. 2022) (quoting *United States v. Biasucci*, 786 F.2d 504, 513 (2d Cir. 1986)).

Furthermore, when making a claim under 18 U.S.C. § 1962(a), "alleging an injury solely from the predicate racketeering acts themselves is not sufficient because § 1962(a) does not prohibit those acts."[99] Instead, "any injury must flow from the use or investment of racketeering income."[100] Therefore, the plaintiff must argue facts alleging that the money from the underlying fraud was reinvested in a way that harmed the plaintiff.[101]

Here, the Trustee alleges that (1) a debt existed because according to the Agreement, Anadrill owed GMC $1,016,000.00;[102] (2) the debt was unenforceable under New York usury laws because the interest rate was excessive, making the agreement void *ab initio*;[103] (3) the interest rate is more than twice the legal rate of 25% because the Trustee calculated the interest rate to be 61.13%;[104] (4) GMC aided in the collection of the unenforceable debt "in that it drafted the payments for the usurious loan via ACH from the Debtor's bank account;"[105] and finally the Trustee alleges that (5) GMC acted knowingly because GMC makes these allegedly usurious loans routinely and tries to conceal them by calling the agreements sales of "receivables," and GMC used the proceeds to invest in operations that tried to issue more usurious loans to other businesses.[106]

---

[99] *Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 929 (5th Cir. 2002).
[100] *St. Paul Mercury Ins. Co. v. Williamson,* 224 F.3d 425, 441 (5th Cir. 2000).
[101] *Nolen*, 293 F.3d at 929; *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 735 F. Supp. 2d 679, 700 (S.D. Tex. 2010) ("Although the Fifth Circuit has not specifically ruled on this issue, courts within the circuit have generally rejected Section 1962(a) claims based upon allegations that the defendant merely reinvested the proceeds into its business for purposes of perpetuation or expansion. As one court has stated, 'it is not sufficient to merely show that a defendant invested or used the income derived from its pattern of racketeering activity to facilitate its own general operations and that the continuing operation of the enterprise injured the plaintiffs.'") (quoting *Turner v. Union Planters Bank of S. Miss.*, 974 F. Supp. 890, 894 (S.D. Miss. 1997)).
[102] ECF No. 1, ¶¶ 9, 51(a).
[103] ECF No. 1, ¶ 51(a).
[104] ECF No. 1, ¶ 51(a).
[105] ECF No. 1, ¶ 51(b).
[106] ECF No. 1, ¶ 51(c)-(e).

Furthermore, the Trustee argues that in a RICO claim brought under 18 U.S.C. 1962(a), one who commits a fraudulent activity can be the sole defendant.[107] But the Trustee fails to allege any facts indicating that Anadrill was injured from GMC's reinvesting of the funds.[108] Thus, the Trustee has not pled a plausible claim for relief as to Count 4.[109]

### III.  CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

**SIGNED Wednesday, January 28, 2026**

_____
**Eduardo V. Rodriguez**
**Chief United States Bankruptcy Judge**

---

[107] ECF No. 19, at 24.
[108] *See generally* ECF No. 1; *Nolen*, 293 F.3d at 929-30; ECF No. 24, at 19.
[109] *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 735 F. Supp. 2d 679, 700 (S.D. Tex. 2010) ("Although the Fifth Circuit has not specifically ruled on this issue, courts within the circuit have generally rejected Section 1962(a) claims based upon allegations that the defendant merely reinvested the proceeds into its business for purposes of perpetuation or expansion. As one court has stated, 'it is not sufficient to merely show that a defendant invested or used the income derived from its pattern of racketeering activity to facilitate its own operations and that the continuing operation of the enterprise injured the Intervenors.'").